# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-KA-00933-COA

**JORGE CARLOS ADAY-CAZORLA A/K/A**            **APPELLANT**
**JORGE ADAY CAZORLA A/K/A ADAY**
**CAZORLA**

**v.**

**STATE OF MISSISSIPPI**                                    **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/06/2019 |
| TRIAL JUDGE: | HON. STEVE S. RATCLIFF III |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | RICHARD POOLE NOEL III |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BILLY L. GORE |
| DISTRICT ATTORNEY: | JOHN K. BRAMLETT JR. |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 01/12/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE BARNES, C.J., McDONALD AND LAWRENCE, JJ.

### LAWRENCE, J., FOR THE COURT:

¶1. On March 12, 2018, Jorge Aday-Cazorla was indicted in the Rankin County Circuit Court for four counts of sexual battery pursuant to Mississippi Code Annotated section 97-3-95(1)(d) (Rev. 2014) and one count of gratification of lust pursuant to Mississippi Code Annotated section 97-5-23(1) (Rev. 2014).[1] On May 25, 2018, Aday-Cazorla waived arraignment and pled "not guilty" to all five counts. After a two-day jury trial, which began

---

[1] Counts I, III, IV, and V were for sexual battery. Count II was for gratification of lust.

on March 11, 2019, Aday-Cazorla was acquitted of Counts I and II but was convicted of Counts III, IV, and V. On May 6, 2019, Aday-Cazorla was sentenced to serve three thirty-year terms in the custody of the Mississippi Department of Corrections (MDOC), with the sentences set to run concurrently. Aday-Cazorla essentially raises one issue on appeal. He asserts that the circuit court erred by failing to give the jury a curative instruction regarding the State's alleged prejudicial statements during voir dire and by implicitly denying his contemporaneous motion for a mistrial. Finding no error, we affirm the circuit court's judgment.

## FACTS AND PROCEDURAL HISTORY

¶2. At the beginning of trial, during the voir dire process, the State made two alleged prejudicial statements that are the crux of the issue on appeal. On March 11, 2019, Aday-Cazorla proceeded to trial on four counts of sexual battery and one count of gratification of lust in the Rankin County Circuit Court.

### A. First Statement

¶3. The State's first alleged prejudicial statement was made when the State addressed the prospective jurors during voir dire. The first statement and the following exchange of comments between the attorneys and the court is quoted as follows:

> Ms. Purnell: The crime of gratification of lust occurs when an adult touches or handles or rubs a child under the age of 16 to gratify their lust.
>
> Mr. Reeves: Can we approach the bench?
>
> (On-the record bench conference.)

2

Mr. Reeves: I think a – don't take this the wrong way. I object to using the word "the crime occurred." He's not been convicted of anything. To say the crime occurred, that's not proper at this point in the trial. He stands innocent until proven guilty.

The Court: I'm not sure she said it that way.

Mr. Reeves: She said when the crime occurred.

The Court: You just say the elements of the crime and not when the crime occurred.

Mr. Reeves: Alleged.

The Court: Yeah. Just say gratification of lust and not the crime of.

Mr. Reeves: I've got a question. Why would the State go into the elements at this point? It's voir dire. That's your job.

The Court: I'll do that, but I think she's got a question she's going to ask based on those elements.

Ms. Purnell: Yes sir. I want them to know what it's about.

(End of bench conference.)

Defense counsel did not make a motion for a mistrial at this point in the trial. The State continued with the voir dire process. The circuit court did not give the jury any curative instructions as a result of the first statement.

**B.    Second Statement**

¶4.    The State's second alleged prejudicial statement was made later in the voir dire process and approximately thirty-three questions after potential jurors were asked about their beliefs regarding the truthfulness of victims of sexual abuse and the timeliness of the disclosure of their abuse. The second statement and the following exchange of comments

3

between the attorneys and the court is quoted as follows:

> Ms. Purnell: Thank you. In this case you're not going to hear any testimony of any injuries to the victim. These crimes happened between 2013 and 2015. It was not until 2017 they were disclosed.
>
> Mr. Reeves: I object to saying these crimes happened. My client is innocent until proven guilty. I object to that.
>
> The Court: Is that what you said?
>
> Ms. Purnell: Yes, sir.
>
> Mr. Reeves: Judge, I move for a mistrial.
>
> The Court: Any response?
>
> Mr. Reeves: It's the second time it's happened.
>
> The Court: Let's don't do it again.
>
> Ms. Purnell: I'm sorry.
>
> (End of bench conference[.])

The court did not give a ruling on defense counsel's motion for mistrial, nor did defense counsel press the court for a ruling. Further, the court did not later give the jury any curative instructions as a result of the State's comment.

¶5. After the second bench conference, the State made several follow-up statements in the subsequent voir dire examination in attempt to cure any misinformation given to the prospective jurors as follows:

> Ms. Purnell: The **alleged crimes** happened between 2013 and 2015, and it was two years later they disclosed. Are there any of you who feel like in order for [there] to have been a crime you have to have evidence of an injury? It's perfectly fine if you feel that way. I'm telling you now there's not going to be any testimony

4

about any injuries. Are there any of you that would require testimony of an injury for you to be fair and impartial in a case?

(No responses.)

Ms. Purnell: Anybody?

(No responses.)

Ms. Purnell: Do you all understand that at the beginning of every trial the defendant is presumed innocent? And I apologize for saying crime. It was an alleged crime. Right now he's presumed innocent. Do you understand that?

(General affirmative indications.)

Ms. Purnell: And it's the State's job to present the case to you. But everybody that has been found guilty of a crime has been presumed innocent at the beginning. Do you all understand that?

(General affirmative indications.)

(Emphasis added.)

¶6. The trial continued, and after two days, Aday-Cazorla was acquitted of Counts I and II but was convicted of Counts III, IV, and V. A poll of the jury indicated that the returned verdict was unanimous. On June 4, 2019, Aday-Cazorla filed a motion for new trial, which was denied on June 6, 2019. Aday-Cazorla filed a notice of appeal on June 5, 2019.

**STANDARD OF REVIEW**

¶7. "'The standard of review for the denial of a mistrial is abuse of discretion.'" *Young v. State*, 281 So. 3d 179, 186 (¶29) (Miss. Ct. App. 2019) (citing *Ambrose v. State*, 254 So. 3d 77, 116 (¶112) (Miss. 2018)). "'A trial judge need declare a mistrial only when there is an error in the proceedings resulting in substantial and irreparable prejudice to the

defendant's case.'" *Id*. (citing *Hutto v. State*, 227 So. 3d 963, 984 (¶66) (Miss. 2017)). "The trial judge is permitted considerable discretion in determining whether a mistrial is warranted since the judge is best positioned for measuring the prejudicial effect." *Garrett v. State*, 956 So. 2d 229, 233 (¶13) (Miss. Ct. App. 2006).

## ANALYSIS

¶8. Aday-Cazorla argues that the circuit court erred by denying his contemporaneous motion for a mistrial made after the State's second alleged prejudicial statement. Further, he argues that the circuit court erred by failing to instruct the jury on the alleged misstatement of the law.

¶9. The Mississippi Rules of Criminal Procedure provide a remedy for parties who believe their case has been prejudiced by the misconduct of another party, a party's attorney, or anyone acting at their behest. Mississippi Rule of Criminal Procedure 23.5 states:

> Upon motion of any party, the court may declare a mistrial if there occurs during the trial, either inside or outside of the courtroom, misconduct by a party, a party's attorney(s), or someone acting at the behest of a party or a party's attorney(s), resulting in substantial and irreparable prejudice to the movant's case.

> Upon motion of a party or its own motion, the court may declare a mistrial if:

> (a) The trial cannot proceed in conformity with the law; or

> (b) It appears there is no reasonable probability of the jury's agreement upon a verdict.

¶10. Aday-Cazorla's attorney failed to make a contemporaneous motion for a mistrial after the State's first alleged prejudicial statement. "If no contemporaneous objection is made, the error, if any, is waived." *Ronk v. State*, 172 So. 3d 1112,1134 (¶51) (Miss. 2015) (quoting

6

*Cole v. State*, 525 So. 2d 365, 369 (Miss. 1987)). Therefore, any argument regarding the State's first statement is procedurally barred.

¶11. After the State's second alleged prejudicial statement, Aday-Cazorla's attorney objected and made a contemporaneous motion for mistrial. But no ruling was obtained from the circuit court in relation to his motion. "It is the responsibility of the movant to obtain a ruling from the court on motions filed by him and failure to do so constitutes a waiver of same." *Martin v. State*, 354 So. 2d 1114, 1119 (Miss. 1978). "Generally, when a trial court has not ruled on a motion, a defendant is procedurally barred on appeal from claiming error." *Willie v. State*, 585 So. 2d 660, 671 (Miss. 1991), *overruled on other grounds by King v. State*, 784 So. 2d 884, 889-90 (¶¶21, 23) (Miss. 2001). Therefore, any argument on the issue of the State's second statement is procedurally barred.

¶12. Notwithstanding the procedural bar, Aday-Cazorla's argument is without merit. The jury was fully advised and instructed on the proper application of law through jury instructions given by the circuit court at the conclusion of trial and had heard the State's curative statements. Following defense counsel's contemporaneous motion for a mistrial, the State made follow-up statements to the prospective jurors to ensure they understood the importance of the presumption of innocence. In its follow-up statements, the State referred to "alleged crimes" and apologized for its previous use of the word "crimes." Further, the State reiterated the fact that Aday-Cazorla was innocent until proven guilty, and the prospective jurors indicated general appreciation of that proposition.

¶13. Finally, the jury was given multiple jury instructions by the circuit court at the close

of trial to further reinforce the applicable law and their duty as jurors. Jury Instruction Number 1 stated in part:

> When you took your place in the courtroom, you made an oath to follow and apply the instructions of the Court regarding the law. . . . You are to apply the law to the facts and in that way decide the case. The evidence that you are to consider consists of the testimony and statements of the witnesses, any stipulations made by the attorneys, and any exhibits admitted into evidence.

Jury Instruction Number 2 stated in part:

> The law presumes every person charged with the commission of a crime to be innocent. This presumption places upon the State of Mississippi the burden of proving the Defendant guilty of every material element of the crime with which he is charged. Before you can return a verdict of guilty, the State must prove that the Defendant is guilty beyond a reasonable doubt. The Defendant is not required to prove his innocence.

The jury was instructed on the applicable law, and "[i]t is presumed that jurors follow the instructions of the court." *Johnson v. State*, 475 So. 2d 1136, 1142 (Miss. 1985) (citing *Payne v. State*, 462 So. 2d 902, 904 (Miss. 1984)). "To presume otherwise would be to render the jury system inoperable." *Id.* In this case, there is nothing in the record to indicate that the jurors did not follow the law or that Aday-Cazorla suffered any prejudice as a result of the State's comments. Moreover, a poll of the jury showed that their verdict was unanimous. There was no showing of substantial or irreparable prejudice to substantiate Aday-Cazorla's motion for a mistrial or any showing that the few words uttered in this case, among many by the State, would require the need to give the jury a curative instruction. The defense never asked for any sort of curative instruction, and the law given to the jury by the court in the form of jury instructions certainly served a curative purpose if any prejudice had attached.

8

**CONCLUSION**

¶14. After review, we find that the circuit court did not abuse its discretion for failing to give the jury a curative instruction immediately following the defense counsel's contemporaneous objection and implicitly denying his motion for a mistrial. Therefore, the circuit court's judgment is affirmed.

¶15. **AFFIRMED.**

**BARNES, C.J., WILSON, P.J., GREENLEE, McDONALD AND McCARTY, JJ., CONCUR. WESTBROOKS, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION, JOINED BY McDONALD AND McCARTY, JJ. CARLTON, P.J., NOT PARTICIPATING.**

**WESTBROOKS, J., SPECIALLY CONCURRING:**

¶16. I concur with the majority; however, I write separately to emphasize that it is incumbent on the party asserting the error to make a contemporaneous objection and obtain a ruling in order to preserve the objection. *Walker v. State*, 299 So. 3d 759, 765 (¶21) (Miss. 2020). As stated in *Read v. State*, 430 So. 2d 832, 838 (Miss. 1983), "Lawyers, not defendants, make objections and preserve points for appeal." However, for the objection to be preserved, "[i]t is the responsibility of the movant to obtain a ruling from the court on motions filed by him[,] and failure to do so constitutes a waiver of same." *Martin v. State*, 354 So. 2d 1114, 1119 (Miss. 1978).

¶17. This importance of receiving a ruling has been long-standing throughout the legal history of Mississippi and is seen in *Grant v. Planters' Bank*, 5 Miss. (4 Howard) 326, 328-29 (1840), where a party entered a motion for a change of venue, but no decision had been rendered on the motion, causing the motion to be presumed waived.

9

¶18. In *Walker*, 299 So. 3d at 765 (¶21), the trial judge did not make "a definitive, on-the-record ruling," and Walker's attorney "failed to ask for such a ruling." Because Walker's attorney did not insist that the trial judge make a definitive ruling, this issue was waived. *Id.*; *see Rials v. Duckworth*, 822 So. 2d 283, 288 (¶22) (Miss. 2002) ("This Court has held that a defendant waives his objection 'where an objection is made and a definitive ruling is not obtained nor any corrective action requested.'" (quoting *Walters v. State*, 720 So. 2d 856, 864 (¶25) (Miss. 1998))).

¶19. Additionally, in *McGee v. Maryland Cas. Co.*, 240 Miss. 447, 451, 127 So. 2d 656, 657 (1961), the appellant did not request the court to rule upon the reserved ruling, and the court could not therefore be charged with error on appeal. "Where objection is made to evidence and the court reserves its ruling, the objector will be deemed to have waived his objection unless he requests a ruling thereon before the case is submitted to the jury." *Id.* "And it was also the duty of the appellant to bring the judge's 'reserved ruling' to the attention of the trial judge." *Id.*

¶20. While the need for a ruling on motions and objections has been well articulated throughout law, many practitioners still fail to demand rulings resulting in waiver. The majority emphasizes the need for a contemporaneous motion; however, whether the motion is made instantaneously or delayed, the need for a ruling is conjunctive with the motion. The attorney should ensure that a ruling is made before the trial concludes or the matter is sent to the jury. Here, after the second alleged prejudicial statement was made by the State, Aday-Cazorla's attorney motioned for a mistrial but did not advocate for a ruling from the court,

10

which constituted a waiver of the issue. It is the due diligence of the lawyer to see a motion through to a ruling. While one may perceive this form of advocacy to be confrontational with the court, it is not; this is simply effective representation for the client. When noting the importance of receiving a ruling subsequent to a motion, this creates a heightened standard for the legal community to uphold.

¶21.    Again, I write separately to emphasize the importance of requesting a ruling for a motion made. The failure to do so could possibly cause harm to the client or potentially rise to claims of ineffective assistance. This is why it is imperative to not only make objections but preserve the issues for appeal by demanding a ruling.

**McDONALD AND McCARTY, JJ., JOIN THIS OPINION.**